UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**PAULA BERRY,**

    **Plaintiff,**

**v.**                                                                                  **Case No: 5:13-cv-244-Oc-18PRL**

**COMMISSIONER OF SOCIAL
SECURITY and SSA**

    **Defendants.**

___

## REPORT AND RECOMMENDATION[1]

**THIS CAUSE** is before the Court on Plaintiff's appeal of an administrative decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI"). The Court has reviewed the record, the memoranda, and the applicable law. For the reasons set forth herein, the Commissioner's decision should be **AFFIRMED.**

### I.  Procedural History and Summary of the ALJ's Decision

On June 4, 2009, Plaintiff filed applications for DIB and SSI alleging a disability onset date of March 26, 2009. (Tr. 231-37, 238-43). Plaintiff filed a prior set of applications, which were denied by an Administrative Law Judge ("ALJ") on March 30, 2009. (Tr. 113-25). Plaintiff did not request review of that decision. (Tr. 13). On March 21, 2011, an ALJ declined to reopen these applications and issued a res judicata decision. (Tr. 126-35). The Appeals Council remanded the case for further proceedings stating that although res judicata applied to the

___

[1] Specific written objections may be filed in accordance with 28 U.S.C. § 636, and Rule 6.02, Local Rules, M.D. Fla., within fourteen (14) days after service of this report and recommendation. Failure to file timely objections shall bar the party from a *de novo* determination by a district judge and from attacking factual findings on appeal.

prior period of September 25, 2006 through March 30, 2009, it did not apply to the period since the March 30, 2009 decision. (Tr. 136-39). On October 28, 2011, ALJ Douglas Walker held a hearing (Tr. 42-61) and on November 22, 2011 issued a decision finding Plaintiff not disabled from March 31, 2009 through the date of his decision. (Tr. 13-23).

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 31, 2009, the alleged onset date. (Tr. 15). At step two, the ALJ determined that Plaintiff had the following severe impairments: diabetes mellitus, obesity and affective disorder. (Tr. 15).

At step three, the ALJ found that Plaintiff did not have an impairment or a combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 16). Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to

> Perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). Specifically, the claimant can sit, stand and walk six hours in an eight-hour workday and lift 20 pounds occasionally and 10 pounds frequently. The claimant should avoid frequent ascending and descending stairs. She should avoid pushing and pulling motions with her lower extremities within the aforementioned weight restrictions. The claimant should avoid activities requiring bilateral fine and continuous manipulation with handling, reaching, feeling, pushing/pulling and fingering. Due to the claimant's mild to moderate pain and medication side effects, the claimant should avoid hazards in the workplace such as unprotected areas of moving machinery; heights; ramps; ladders; scaffolding and on the ground, unprotected areas of holes and pits. The claimant could perform each of the following postural activities occasionally: balancing, stooping, crouching, kneeling, and crawling; but not climbing. The claimant can work in a low stress environment performing 1-2-3 step simple instructions.

(Tr. 16).

At step four, the ALJ determined that Plaintiff was unable to perform any past relevant work. (Tr. 21). However, at step five, the ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy

that the claimant can perform. (Tr. 21). Thus, the ALJ found that Plaintiff was not disabled from March 31, 2009, through the date of the decision. (Tr. 22). The Appeals Council denied Plaintiff's Request for Review. (Tr. 1-4). After exhausting her administrative remedies, Plaintiff timely filed the instant appeal. (Doc. 1).

## II.  Social Security Act Eligibility and Standard of Review

A claimant is entitled to disability benefits when she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a). The Commissioner has established a five-step sequential analysis for evaluating a claim of disability. *See* 20 C.F.R. §404.1520. The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988)(citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is "more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995)(per curiam)(internal citations omitted); see also *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).

When the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if

the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)(per curiam).  "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote,* 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992)(stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

### III.  Analysis

Plaintiff's primary argument on appeal is that the ALJ failed to properly develop a full and fair record with regard to Plaintiff's "mental health impairment."  Specifically, Plaintiff contends that rather than sending Plaintiff out for an updated consultative mental health exam and a mental residual functional capacity assessment, the ALJ erred by relying on outdated medical evidence. (Doc. 27 at 23-25).  Plaintiff asserts that "[h]ad ALJ Walker secured the requested mental health examination and an updated mental residual functional capacity assessment from the consultative examiner the decision would have fairly reflected Plaintiff Berry's mental residual functional capacity at the time of the decision."  (Doc. 27 at 25).

It is well-settled that the ALJ has a "basic obligation" to develop and full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).[2]  Although the ALJ has a basic obligation to fully and fairly develop the record, Plaintiff – and not the ALJ – bears the burden of proving she is disabled, and thus, Plaintiff is responsible for producing evidence to support her

---

[2] This basic obligation only rises to the level of a special duty when a claimant is unrepresented and unfamiliar with hearing procedures.  *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).  Here, Plaintiff was represented at the administrative hearing by an attorney (Tr. 44) and Plaintiff raises no challenge regarding her representation.  Accordingly, the ALJ's duty to develop a full and fair record did not rise to the level of a heightened duty. *See Ellison*, 355 F.3d at 1276-77.

claim. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). The ALJ's obligation to develop a full and fair record includes ordering a consultative examination if one is needed to make an informed decision. *See Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984). However, an ALJ is not required to order a consultative examination as long as the record contains sufficient evidence for the ALJ to make an informed decision. *See Doughty v. Apfel*, 245 F.3d 1274, 1280-81 (11th Cir. 2001); *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999).

Because the Social Security Act requires only substantial evidence to support the ALJ's findings, a consultative examination is not required to establish absolute certainty regarding Plaintiff's condition. *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir. 1988). Moreover, "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner] for further development of the record." *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). The court should be guided by whether the record shows evidentiary gaps which result in unfairness or "clear prejudice." *Id.*

Here, Plaintiff failed to show that a consultative examination was necessary for the ALJ to make an informed decision or that she was prejudiced by the lack of a consultative examination. As an initial matter, although Plaintiff characterizes certain medical evidence as "outdated," all of the records considered by the ALJ – including the October 2009 consultative psychological evaluation by David M. Bortnick, Ph.D, Psy.D. and the December 2009 opinion by a State agency psychologist – were from the relevant period of time, and thus, properly relied upon.[3] Moreover,

---

[3] The regulations require the ALJ to evaluate the medical evidence from the relevant period. *See* 20 C.F.R. §404.1512(d), 416.912(d)(requiring the Commissioner to develop a complete medical history for at least the 12 months preceding the month in which the application is filed); 20 C.F.R. §404.1527 (noting that the Commissioner "will evaluate every medical opinion we receive.")

in evaluating Plaintiff's mental impairment the ALJ considered the more recent records from the Marion County Health Department (October 23, 2009 through April 22, 2011, Tr. 843-45, 949-1001) and The Centers (August 9, 2011, Tr. 1013-14).

The ALJ properly relied upon the consultative examination by Dr. Bortnick who evaluated Plaintiff on October 8, 2009, more than six months after the alleged onset date.  (Tr. 841-42). The ALJ noted that Dr. Bortnick found Plaintiff friendly, cooperative, alert, and oriented; she had no signs of anxiety, depression, pain, bizarre thinking, or cognitive impairment; she could pay attention and concentrate; she smiled and laughed appropriately; her recent and remote memory were satisfactory.  (Tr. 841-42).  Plaintiff reported that she lived independently, managed her own affairs, performed all self-care behavior, cooked and did housekeeping, operated a motor vehicle, shopped, was a Vocational Rehabilitation client, and had satisfying interpersonal relationships.  (Tr. 842).  Dr. Bortnick noted that Plaintiff's allegations of disability were medical, not psychological.  (Tr. 842).  His impression was "Adjustment Disorder with Depressed Mood by Report" but concluded that Plaintiff had the mental ability to work in some capacity and that she could manage her own finances.  (Tr. 842).

The ALJ also considered the more recent records from the Marion County Health Department and correctly noted that Plaintiff reported being depressed and was assessed with depression.  (Tr. 843-45, 949-1001).  Without pointing to any specific opinions contained in these records or identifying any records that the ALJ failed to discuss, Plaintiff contends that the ALJ failed to properly evaluate opinions of treating physicians purportedly contained therein. (Doc. 27 at 27).  The Court is at a loss since a review of these records shows mostly treatment notes, and does not appear to contain an assessment of Plaintiff's functional limitations.  Because

Plaintiff failed to sufficiently develop and support this argument, the Court declines to address it. *See e.g., U.S. Steel Corp. v. Astrue*, 495 F.3d 1272, 1287 n.13 (11th Cir. 2007).

The ALJ also addressed the August 9, 2011 Psychiatric Assessment-Mental Status Exam performed by a nurse practitioner at The Centers (Tr. 19, 1013-14).[4] Plaintiff was diagnosed with *inter alia* adjustment disorder with depression and prescribed medications. On mental status, Plaintiff was oriented x3 and coherent and her thought processes and content were within normal limits, but Nurse Rye noted some slowness of cognition and memory problems. The ALJ relied upon these findings regarding memory and cognition in concluding that Plaintiff had moderate deficiencies in concentration, persistence or pace. (Tr. 21, 886, 1013-14).

The ALJ also considered the December 11, 2009 Psychiatric Review Technique ("PRTF") completed by a State agency psychologist. (Tr. 876-89). The State agency psychologist opined that Plaintiff's mental impairment was non-severe secondary to mild restrictions of activities of daily living, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation. Although Plaintiff contends that the State agency psychologist's opinion was outdated, it was completed during the relevant period of time and the ALJ considered the opinion in light of all of the record evidence. First, the ALJ agreed that Plaintiff had only mild restrictions of activities of daily living, noting that she could take care of her personal needs, perform household chores, cook, mop, sweep, and do the dishes. (Tr. 22, 307-08). Next, the ALJ agreed that Plaintiff had only mild restrictions of activities of social functioning because although Plaintiff stated that she has no friends and would rather be alone, she is able to go to church and to Bible study; she is able to drive, go to the post

---

[4] Although a nurse practitioner is not considered to be an "acceptable medical source," the ALJ may use evidence from a nurse to show the severity of a claimant's impairments and its effect on her ability to function. *See* SSR 06-03p, 2006 WL 2329939, at *2 (S.S.A.).

office and go shopping and has contact with her sister and at least one friend. (Tr. 21, 310-11, 314-21, 842). With respect to concentration, persistence or pace, the ALJ disagreed with the State agency psychologist and found that Plaintiff had moderate deficiencies. (Tr. 21, 886). The ALJ explained that although Dr. Bortnik found that Plaintiff's memory, attention and concentration were normal and Plaintiff's sister reported that Plaintiff could pay bills, count change, use a checkbook, watch television, and read (Tr. 317-18), the records from The Centers showed that Plaintiff experienced problems with memory and cognition. (Tr. 1013-14). The ALJ also agreed with the State agency psychologist that Plaintiff had no episodes of decompensation.[5]

Based on the foregoing, there was sufficient evidence for the ALJ to make an informed decision regarding Plaintiff's mental health impairment. Plaintiff's unsupported allegations are not a sufficient basis for finding that a consultative examination was necessary. Indeed, Plaintiff can only speculate that a consultative examination would support – and not refute – her claim of a disabling mental impairment. Accordingly, the ALJ was not required to order a consultative psychological examination. Moreover, as discussed above, the ALJ's evaluation of Plaintiff's mental impairment was supported by substantial record evidence and Plaintiff has failed to carry her burden to show that her mental health impairment caused greater functional limitations than those assessed by the ALJ.

---

[5] In yet another cursory argument, Plaintiff contends that the ALJ "failed to address the weight afforded to the opinion evidence within the file and his decision is devoid of any analysis of the required factors and thus does not satisfy the requirements of 20 C.F.R. §404.1520a." (Doc. 27 at 27). The Eleventh Circuit has held that where a claimant has presented a colorable claim of mental impairment, the ALJ must complete a PRTF or explicitly analyze the four factors set forth in 20 C.F.R. §404.1520a – i.e., activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.) *See Volley v. Astrue*, 2008 WL 822192, at *19 (N.D. Ga. 2008). Here, as discussed above, the ALJ explicitly discussed all four factors in light of all the record evidence.

## IV. RECOMMENDATION

For the reasons stated above, it is respectfully **RECOMMENDED** that the ALJ'S decision should be **AFFIRMED.**

**DONE AND ENTERED** in Ocala, Florida, on June 11, 2014.

*[signature]*

PHILIP R. LAMMENS
United States Magistrate Judge

Copies to:

District Judge

All Counsel